# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ELSA R. AGUIRRE for DAVID L.**
**STROBLE, a minor child,**

    **Plaintiff,**

v.                                                                                       No. CIV 99-0025 BB/LCS

**LARRY G. MASSANARI,[1]**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and/or Remand Administrative Agency Decision (Doc. 7), filed August 10, 1999, and referred on May 1, 2001. Plaintiff brought this action on behalf of her minor son, David L. Stroble (David), who was born on March 9, 1985. The Commissioner of Social Security issued a final decision denying David's application for supplemental security income. The United States Magistrate Judge, having considered the Motion, memoranda, administrative record, and applicable law, finds that the Motion is well-taken and recommends that it be **GRANTED**.

## PROPOSED FINDINGS

    1.    On October 29, 1992, Plaintiff filed an application for supplemental security income

---

[1] Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. PRO. 25 (d), Larry G. Massanari , Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

on behalf of her son David Stroble (David). (R. at 24-28.) Plaintiff alleged that David had been disabled since August 1990 due to a learning disability. (*Id*.) At the time of filing, David was seven years old. (R. at 25.)

2. David's application was denied at the initial level on January 14, 1993 (R. at 29-34), and at the reconsideration level on May 10, 1993. (R. at 40-46.) Plaintiff appealed the denial by filing a Request for Hearing by Administrative Law Judge (ALJ) on June 21, 1993. (R. at 47-48.) The ALJ held a hearing on March 17, 1994, at which Plaintiff and David appeared and were represented by a non-attorney. (R. at 113.)

3. The ALJ issued his first decision on September 23, 1994, determining that David's learning disability was not a severe impairment and thus he was not a disabled child within the meaning of the Social Security Act. (R. at 11-17.) Plaintiff filed a request for review with the Appeals Council, (R. at 5-6), which was denied on March 13, 1995. (R. at 3-4.) Plaintiff appealed to this Court. (R. at 147-48). On April 22, 1996, this Court remanded the case for re-evaluation of whether David's learning disability constituted a severe impairment at step two. (R. at 151-57.)

4. On remand, the ALJ held a supplemental hearing on June 5, 1997, at which Plaintiff and David appeared and were represented by counsel. (R. at 244.) On September 19, 1997, the ALJ issued his second decision, which denied David's application at step three of the sequential evaluation process because the ALJ found that the record failed to establish that David had an impairment meeting or equaling in severity any of those described in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599. (R. at 139-44.) While the ALJ acknowledged that "[t]est results have **uniformly** described values 2 to 3 standard deviations from expected," he discounted these test results because "teacher actions have **uniformly** described the claimant as making progress

etc, and **advancing** him in grade!" (R. at 142) (*emphasis in original*). Accepting the teachers' opinions as "more reflective of the claimant's abilities," the ALJ concluded that David was not disabled. (R. at 144.) Plaintiff filed a timely request for review, (R. at 124-32), which the Appeals Council denied on November 6, 1998. (R. at 122-23.) Plaintiff filed this action on January 7, 1999, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). This matter was referred to the undersigned United States Magistrate Judge on May 1, 2001.

**Standard of Review**

5. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F. 2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F. 2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F. 2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F. 2d 802, 805 (10th Cir. 1988).

6. An individual under the age of 18 is considered disabled if that child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C) (as amended by P. L. 104-193, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, § 211) (*superseding Sullivan v. Zebley*, 493 U.S. 521 (1990)).

7. A sequential three-step process governs the ALJ's determination of whether a child

satisfies this statutory standard. *Brown v. Callahan*, 120 F. 3d 1133, 1135 (10th Cir. 1997). The ALJ must determine (1) that the child has not engaged in substantial gainful activity, (2) that the child has a severe impairment or combination of impairments, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404 (listings). *See* 20 C.F.R. § 416. 924(a).[2]

       8.      If the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2). An impairment is functionally equivalent to a listed impairment if a claimant has an extreme limitation in one area of functioning or marked limitations in two or more areas of functioning. *See* 20 C.F.R. § 416.926a(b)(2). In assessing functional equivalence, the ALJ must assess all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs; (2) how the child functions in school; and (3) how the child is affected by medications or other treatment. *See* 20 C.F.R. 416.926a(a)(1)-(3).

**Administrative Record**

       9.      On November 6, 1991, when he was in the first grade, David was referred for multidisciplinary testing due to concerns about his academic progress. (R. at 76-83.) James Decker, a certified Educational Diagnostician, identified David as learning disabled based on extensive standardized testing and his professional evaluation. (R. at 82.) The learning disability was presumed

---

[2] The regulations set out at 20 C.F.R.§ 416.926a were amended effective January 2, 2001, and apply to cases pending on that date. *See Briggs v. Massanari*, ___ F. 3d ____ 2001 W.L. 491071 n.2 (10th Cir. May 8, 2001); 65 Fed. Reg. 54747 (Sept. 11, 2000). The amendments changed the evaluation process and provided for a single method of evaluation based only on domains of functioning, but did not modify the definitions for marked and extreme limitations. *See* 65 Fed. Reg. at 54755.

to be due to central nervous system dysfunction. (*Id.*)  David's performance levels were lower than those of his peers in nine out of eleven areas.  (R. at 78.)  While David had a full scale IQ of 87 and a performance IQ of 96, his reading, mathematic, and written language abilities were equivalent to kindergarten level.  (R. at 80.)  Although David was six years old, his short term memory and memory for sentences were equivalent to that of a four year old. (R. at 80-81.)  Based on these results, David was diagnosed as learning disabled.  (R. at 82.)

   10. On February 20, 1992, when David was in the second grade, Shirley Belcher, a Speech-Language Pathologist, performed a Communication Evaluation.  (R. at 90-94.)  The resulting report states that David had "mild problems with articulation," but "moderate difficulty with a number of oral language skills," and that his answers were of adequate length and complete but "moderately disorganized." (*Id.*)  Although David was six years, eleven months old at the time, total score for the Test of Problem Solving (TOPS) was equivalent to a child at age three and one-half years.  (R. at 92.).  The test interpretation reflected that one part of the test, Determining Solutions, was problematic in that "it could have an impact on David's ability to comprehend reading material and to solve arithmetic story problems." (*Id.*)  Expressive vocabulary was weak and David exhibited weaknesses in oral directions, sentence formulation and comprehension of material read to him.  (R. at 93.)  Ms. Belcher, the evaluator, concluded that David met the criteria for Communication Disordered/Language and Communication Disordered/Articulation and that intervention was needed in the areas of articulation, semantics, information processing, verbal planning/organization, and grammar and syntax.  (R. at 93-94.)

   11. A May 1992 Individualized Education Program Report (IEP), completed when David was in second grade, recommended "extensive modification of content curriculum and pacing." (R.

at 96-97.) The IEP also recommended 24-26 hours per week with a "D-level Special Ed teacher" and one hour per week in speech and language therapy. (R. at 97.) David was placed with a regular education teacher for only 5 to 7 hours per week. (*Id.*) The report concluded that David was Learning Disabled, Communication Disordered (Language) and Communication Disordered (Articulation). (R. at 96.)

12. On December 1992 classroom observation form, Roxanne Frazier, David's special education teacher, and Diane Tautges, his language pathologist, wrote that David had an excellent attendance record, had never been a behavior problem, was a hard worker, was well-liked by his classmates and teachers, and was able to do all physical education activities. (R. at 66-67.) It was noted that David had difficulty expressing himself due to problems with sequencing, syntax, use of vocabulary and revisions. (R. at 67.)

13. On March 31, 1993, when David was eight years old, Carin White, M.S., a Speech and Language Pathologist, administered a Language Screening Evaluation, which included a CELF-R standardized test. (R. at 104-106.) David's repetitive language score was 63, his expressive language score was 67, and his total language score was 67. (R. at 106.) The mean on the CELF-R was 100, with a standard deviation of 15. (*Id.*) Thus, David's scores were over two standard deviations below the norm, placing him in the 1st percentile. (*Id.*) Although Davis was eight years old, his total score had an age equivalent of five years and three months. (*Id.*)

14. In a February 1995 multidisciplinary evaluation, Dr. Kathleen Gabel, PhD, administered several standardized tests, including the WJ-R. (R. at 213-20.) On the WJ-R, David scored a 60 in reading and a 62 in written language. (R. at 215.) The mean on the WJ-R was 100, with a standard deviation of 15. (*Id.*) Again, David's scores were more than two standard deviations

below the norm of 100.  (*Id.*)

15.     Dr. Gabel noted that David's written language skills were significantly below his current grade placement. (R. at 216.)  Although he was 9 years, eleven months old and in the fourth grade, David's reading score reflected an age equivalent of 6 years 11 months and a grade equivalent of 1.4, and his written language score reflected an age equivalent of 7 years, 1 month, and a grade equivalent of 1.5. (R. at 213; 220) David was confused by language presented to him and required repetition. (*Id.*)  Although Dr. Gabel noted that David was motivated to do the "very best that he can" and that the test results appeared to be valid, David had difficulty processing oral information, demonstrated below average memory skills, and exhibited visual reversals when writing. (R. at 216-17.)

16.     A November 1996 IEP, completed when David was in sixth grade, reaffirmed that David was "learning disabled, language impaired" and needed special education services in math, reading and written language, but could participate in regular physical education, library, computer, science and social studies classes. (R. at 223.)  The IEP recommended "shortened assignments, more time to complete, [and] modified grading scale" and that David spend fifteen hours per week in special education, fourteen hours per week in regular education, and one hour per week in speech and language therapy.  (R. at 224.)

17.     In March 1997, David took the Iowa Test of Basic Skills. (R. at 239.)  His composite percentile rank was in the second percentile.  (*Id.*)  David scored lower than the tenth percentile in vocabulary, reading comprehension, spelling, capitalization, concepts/estimates, data interpretation, math, social studies, maps and diagrams, sources of information, and computation.  (*Id.*)

18.     At the first hearing, nine-year-old David gave extremely limited testimony, stating that

he "forgot" why he was there. (R. at 116-17.) Plaintiff testified that, in the first grade, David hated to go to school because he was unable to do his work and that he was placed in special education. (R. at 118.) David played with simple games designed for smaller children because he was unable to follow directions. (R. at 118-19.) David had such difficulty communicating that his mother had to "keep at him" to understand what he was trying to say. (R. at 119.)

19. At the second hearing, David was twelve years old and again gave limited testimony. (R. at 246-29.) Plaintiff testified that while David was given passing letter grades on his report card, he actually scored only 30 or 40 percent on class homework and tests. (R. at 250.) In November 1996, David had been placed on a modified grading scale, which would account for his report card grades being higher than the grades her actually received in class. (*Id*.) David was unable to read the newspaper or instructions for games, and was unable to follow more than one or two verbal instructions at a time. (R. at 251-52.)

**Discussion**

20. Plaintiff argues that the ALJ's determination that David's learning disability does not meet or equal a impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404 is unsupported by substantial evidence. Specifically, Plaintiff contends that David's learning disability causes marked limitations in cognition, communication and marked limitations in concentration, persistence and pace.

21. The ALJ acknowledged that "[t]est results have **uniformly** described values 2 to 3 standard deviations from expected." (R. at 142, emphasis in original.) The ALJ discounted these test results because "teacher actions have **uniformly** described the claimant as making progress etc, and **advancing** him in grade!" (R. at 142, emphasis in original.) Accepting the teachers' opinions as

"more reflective of the claimant's abilities" that ALJ concluded that the evidence documented no serious interference with David's functioning.  (R. at 143-44.)

     22.    Plaintiff contends that David's learning disability meets the criteria of 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.02.  Section 112.02 provides:

> Organic Mental Disorders: Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.  The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

Pt. 404, Subpt. P, App. 1, § 112.02.

     23.    Paragraph A of § 112.02 requires that "[m]edically documented persistence of at least one of the following" must be present:

> (1) developmental arrest, delay or regression;
> (2) disorientation to time and place;
> (3) memory impairment, either short-term or long-term;
> (4) perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid thinking);
> (5) disturbance in personality (e.g., apathy, hostility);
> (6) disturbance in mood (e.g., mania, depression);
> (7) emotional lability (e.g., sudden crying);
> (8) impairment or impulse control (e.g., disinhibited social behavior, explosive temper outburst);
> (9) impairment of cognitive function, as measured by clinically timely standardized psychological testing; or
> (10)  disturbance of concentration, attention, or judgment.

Pt. 404, Subpt. P, App. 1, § 112.02.

     24.    In addition to having at least one of the requirements set forth in Paragraph A of § 112.02, the claimant must also meet the requirements of Paragraph B.  Paragraph B provides that the

claimant must have at least two of the following:

>(a) marked impairment in age-appropriate cognitive/communicative function;
>(b) marked impairment in age-appropriate social functioning;
>(c) marked impairment in age-appropriate personal functioning; or
>(d) deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner.

Pt. 404, Subpt. P, App. 1, § 112.02.

25. The regulations further provide that "[t]he use of standardized tests is the preferred method of documentation." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.00(C). "When standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the norm for the test will be considered a marked restriction." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.00(C); *see also* 20 C.F.R. §416.926a(e)(2)(i) (marked limitation may be shown with "standardized testing scores that are at least two, but less than three, standard deviations below the mean").

26. The record is replete with evidence that David's learning disability meets the criteria of Section 112.02. On the WJ-R test, David scored a 60 in reading and a 62 in written language. (R. at 215.) The mean on the WJ-R was 100, with a standard deviation of 15. (*Id.*) David's scores were more than two standard deviations below the norm of 100 on the WJ-R. (*Id.*) The WJ-R test results demonstrate that David has an impairment of cognitive function, as measured by clinically timely standardized psychological testing. Thus, David's conditions meets the requirements of Section 112.02, Paragraph A, (9).

27. David also meets two requirements of 112.02, Paragraph B. On the CELF-R test, David's repetitive language score was 63, his expressive language score was 67, and his total language score was 67. (R. at 106.) The mean on the CELF-R was 100, with a standard deviation

of 15. (*Id.*) Thus, David's scores were over two standard deviations below the norm on the CELF-R. (*Id.*) A score that is two standard deviations below the norm for the test constitutes a marked restriction. 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.00(C). The results of the CELF-R establish a marked impairment in age-appropriate cognitive/communicative function, which meets Section 112.02, Paragraph B (a), one of the two requirements of Section 112.02, Paragraph B.

28. The record further demonstrates that David's condition meets Section 112.02, Paragraph B (d), deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner. David's IEPs and evaluations repeatedly state that he required assistance to complete tasks, needed additional time to process information, required shortened assignments, had to have repeated directions, and required modification in pacing. Plaintiff testified that David was unable to read the newspaper or instructions for games and was unable to follow more than one or two verbal instructions at a time. Significantly, the ALJ did not find Plaintiff's or David's credibility to be lacking. Indeed, he failed to discuss their testimony. The record clearly demonstrates deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner. Thus, David's learning disability meets all the criteria of Listing 112.02.

29. The ALJ disregarded the standardized test results because he found them to be inconsistent with David's report card grades and the fact that David was advanced from grade to grade. (R. at 142.) However, a close reading of David's IEPs, evaluations, and academic records establishes that they are in fact consistent with the test scores. David was in special education for most of his classes, placed on a modified grading scale, given shortened assignments, and allocated additional time to complete tasks. Moreover, Plaintiff testified that David received "30s and 40s" on his written work, indicating that the passing final grades were the result of the modified grading

11

scale., and were not a true reflection of David's ability. Although David was advanced in grade level, he remained in special education and continued to work at a lower grade level. Taken in the context of David's special education environment, David's letter grades and advancement are consistent with his test scores.[3]

30.     Defendant argues in his brief that Plaintiff has presented no evidence that David's condition was associated with any organic dysfunction of the brain, as contemplated by the preamble to Listing 112.02. However, the preamble clearly states that the abnormalities in cognition associated with dysfunction of the brain may be demonstrated with psychological tests supporting the presence of an organic factor judged to be etiologically related to the abnormal mental state and the associated loss of specific cognitive abilities. 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.02. David was diagnosed as learning disabled and this condition was attributed to central nervous system dysfunction. (R. at 82.) Therefore, David satisfied the specifications of the preamble to Listing 112.02.

31.     Standardized test results showed David to be two standard deviations below the mean in two domains. A communication evaluation established that David satisfied the criteria for Communication Disordered/Language and Communication Disordered/Articulation. David qualified for special education and speech therapy at school. David's IEPs and evaluations repeatedly state that he required assistance to complete tasks, needed additional time to process information, required shortened assignments, had to have repeated directions, and required modification in pacing. The record contains no evidence that the test results were invalid. The standardized tests results were

---

[3] Under federal regulation, David's public school was required to ensure that he was not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general curriculum. 34 C.F.R. § 300.552(e).

consistent with David's academic records, testimony and Plaintiff's testimony. The standardized test results, the "preferred method of documentation," as well as the entire record, establish that David meets or functionally equals the requirements of Listing 112.02. Therefore, David is a disabled child within the meaning of the Social Security Act.

32.    This Court has discretion to remand a case or to reverse and order an immediate award of benefits. *Ragland v. Shalala*, 992 F. 2d 1056, 1060 (10th Cir. 1993). Benefits may be awarded when substantial evidence requires a finding of disability. *Talbot v. Heckler*, 814 F. 2d 1456, 1465 (10th Cir. 1987). Where "additional fact-finding would serve no useful purpose but would merely delay the receipt of benefits," a remand for an immediate award of benefits may be appropriate. *Harris v. Secretary of Health & Human Servs.*, 821 F. 2d 541, 545 (10th Cir.1987). The Tenth Circuit has referred to the length of time a case has been pending when reversing and remanding for an immediate award of benefits. *See Nielson v. Sullivan*, 992 F. 2d 1118, 1122 (10th Cir.1993). In this case, the record is fully developed and clearly supports a finding of disability. Additional fact-finding would serve no useful purpose and would merely delay the receipt of benefits. David's application was filed almost nine years ago and was remanded on a prior occasion. Under these circumstances, the decision of the ALJ should be reversed and this case should be remanded for an immediate award of benefits.

## RECOMMENDED DISPOSITION

I recommend that Plaintiff's Motion to Reverse and/or Remand Administrative Agency Decision (Doc. 7), filed August 10, 1999, and referred on May 1, 2001, be granted and that this matter be remanded to the Commissioner for an immediate award of benefits.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**